Good morning, ladies and gentlemen. We have five cases before the court this morning. The final case has been submitted on the briefs. The first four are here for argument. The appeal from the decision of the Patent Trial and Appeal Board, Tinnus Enterprises v. Telebrands Corporation. I understand, Mr. Dunlap, that you want four minutes for rebuttal? Yes, Your Honor. Okay, you may begin. Good morning, Your Honors. May it please the Court, on behalf of the appellant, Tinnus Enterprises, I'm Tom Dunlap with Dunlap, Bennett & Ludwig. So, straight to the point, Your Honors, I think there's a very easy path to resolve this appeal today. It's kind of a perfect storm of considerate circumstances. So, three things that this court could do today, I think, in a fairly straightforward manner. First, it could affirm its own prior findings with respect to this claim language and the specification with respect to the indefiniteness of the 066 patent. Second, it could affirm and guide the entire patent bar on the proper standard for indefiniteness with respect to what is the law of the land. And third, this court could let the Patent Trial and Appeals Board know that the words it chooses when instituting a proceeding, a PGR, are important and that it makes a difference whether it's instituted under 314A or 324A and what words it uses to say, we're going to begin a proceeding, make a difference. You don't mention the possibility of us just disagreeing with the board's application of its own Packard standard. If we find this not indefinite, even under Packard, isn't that enough for you? It would be, Your Honor. If you found it not indefinite under Packard, it's enough for this appeal. So, I don't want to reach beyond what we're looking for in the appeal, but I think there is a basis for this court to say that Nautilus is the law of the land. Sure, but you read the director's notice here. They're withdrawing and they're reconsidering both BRI and the standard for indefiniteness for a PTAP proceeding. So, given that, and if we can resolve this case without resolving some issue that they may further opine on, why wouldn't we do that? You could, Your Honor. And the reason I say why you might not do it, and the reason why I think this is a really interesting kind of historical time, is that, to my knowledge, or at least what we could find, the director has never withdrawn from intervening on behalf of the board before. I think that's Judge Hughes' point. Shouldn't we respect the director enough to give him a chance to look at this? If, and I'm not guaranteeing we could get there, but if we'd find this to be not indefinite, even under Packard. So, Your Honor, two points, I think, from our perspective. If we want to go beyond just indefinite or not, but looking at Nautilus versus Packard. First, this is kind of the job of the Federal Circuit. It's the job of the Federal Circuit is a judicial function. It's also the job of the PTO director. It was given, he or she was given specific statutory authority, authority under the AIA proceedings, and they've exercised that authority, at least with regard to BRI, which was upheld by the Supreme Court. Now they say they're going to reconsider that, and they're also going to consider the indefiniteness standard. Why wouldn't we let that play out at the PTO, given their statutory authority to do so, if we can resolve this case in your favor on the standard that was applied here? I understand, Your Honor, and again, the only reason, or not again, the reason I would suggest is that the PTO has failed to do it to date. They could have promulgated a rule. They could have promulgated a standard. We'd have a much better argument on that point if we were just going forward and the PTO was standing up here and saying, we're still supporting this, and we should resolve this. But they specifically sent in a notice saying, we are going to take another look at this. I don't understand why we would short circuit the director's exercise of his discretion in this regard. So then, Your Honor, I would say, looking at it from that perspective, if you took a 10,000 foot view, if you look at the fact that the director is appointed by the executive, and that the PTO is an executive part of government, and you're the judicial part of government, to me, this is a legal standard. And I don't even think the director needs to reconsider, because Nautilus is the law of the land. It's a Supreme Court decision that came after Packard, and the Supreme Court was very clear when they said they were providing a compass to the patent bar. They didn't say we're providing a compass to district court litigation. But if you're examining in the context of proceedings at the PTAT, these post-grant review proceedings, and indeed in Quozo, they said exactly the opposite, that a different standard for claim construction could apply. I'm not sure whether they would say the same thing for indefiniteness or not. They may say that Nautilus should apply, but this all seems very premature. It seems to me like you're asking us, let's assume we win on the Packard standard. Again, I agree, we can't promise that. I understand. But if you do, you're asking us to issue a lot of premature advisory opinions on what could happen in the future. I mean, even if we went ahead and said Nautilus applied, can't the director still go forward and do rulemaking and say, I think Packard's a good law? And then we're going to have to readdress the same question with the director's record of rulemaking and determine whether that's valid. And why should we hamstring, and I know you're wasting a lot of your time when you could be addressing the real merits of this case, but why would we hamstring the director when we don't need to? So the director originally, in his intervening brief, supported the Packard standard. And in this case, he's withdrawing from the Packard standard. So again, it's not necessarily one way or the other with respect to this case, if you find that the patent is, the claims are definite regardless. But our proposal is that it makes sense for a judicial branch of the government to make a decision. And in fact, that Nautilus is already the law of the lands, like there is no opportunity for anyone. You say that as if that were indisputably true. But it is not indisputably true. In context of Quozo, it could be the case that the PTAB is allowed to apply a different standard. I don't know. It may be, it may not be. Is it your best response, in addition to your argument that we're talking about a purely legal issue, and there doesn't seem to be any indication by Congress that granting the authority to establish rules meant that they were going to change the law on issues like validity. But isn't your best response that in BRI and Quozo, there was a regulatory... There was a promulgated rule, yes, Your Honor. There was a promulgated rule with notice and comment, and that takes about a year and a half. Yes, so... And in the meantime, we've got all these PTAB boards applying Packard. And there's a lot of existing patent owners that need resolution. So in Quozo, you've got a promulgated... Isn't your best response, when it's full enough, it falls off? I'm sorry, Your Honor? I said, isn't your best response, when it's full enough, it falls off? That's my best response. When it's full enough, it falls off. Shaking to detach. So if we want to get to the merits of substantially filled, I think the best argument I have there is this court literally looked at the same thing the PTAB did. It looked at the language of the claims in the context of the specification and said, we say, specifically, substantially filled does not mean desired, right? But we were, again, we were applying KSR, right? I mean, we're applying Nautilus, right? Nautilus, correct, Your Honor. But I don't think it makes a difference. Nautilus or Packard, because it doesn't change the fact that you looked literally to the same thing the Patent Trial and Appeals Board did. You looked to the language of the claim and the specification. And despite all of the other stuff in the PTAB's final written decision, all they did at the end of the day was look at the language. They looked at the semantics. They looked at what it said. And then Telebrands, along with the Patent Trial and Appeals Board, tried to take you from the middle of the claim language, from the word filled, define that, and then work outwards. It's like buying something from Ikea and trying to assemble the furniture by starting in the middle of the instructions. I do that all the time. Yeah, and you've got the legs on backwards, and there's three extra screws. I mean, that's what they're doing with the claim language. They're trying to make you build a bad Ikea table. So in our view, I think this court did it correctly in the 066 case, in the preliminary injunction case. And I think that today, the easiest thing for the court to do is say, yeah, what we said when we looked at the claim language last time is also true now. And it doesn't change under Packard or Nautilus. Our advocacy for Nautilus is kind of a broader policy advocacy for Nautilus. As I understand it, this language was added in response. The examiner added this language. The PTO itself added it. And from that perspective, Telebrans is saying at the same time, well, the PTO is the only one, the Patent Trial and Appeals Board is the only one with the experience to say, and you should give them great deference to their decision, they're the ones who know. And that's really the only basis for deference here, because clearly the Packard standard wasn't applied with formality, wasn't applied consistently, because in covered business methods, they frequently use the Nautilus standard. So the only basis they have is give us deference because the Patent Trial and Appeals Board is the experts. But to your point, the examiner inserted substantially filled into this claim. And this court interpreted it. Do we know from the prosecution history why the examiner wanted substantially filled out? He did not. It's not explained in the prosecution history. But I think that the good news is that, and the other thing I think that Telebrans and the Patent Trial and Appeals Board leaves out is a person of ordinary skill in the art. The standard is, would a person of ordinary skill in the art, looking at this, understand it? Reading the whole claim, not reading the word filled, would they understand what filled means, but do they understand how this water balloon apparatus works? And time and again, we found that they have. I think, in fact, the Patent Trial and Appeals Board has passed on two of the child patents. Now, the language is different, so I'm not going to rest on that. But it's clear that time and time again, they try to exclude the person of ordinary skill in the art, and they try to exclude looking at the whole claim. They try to decontextualize the language and look literally just at the word filled, and then outward. Oh, and what does substantially mean? And we'll let's assign a volumetric amount. What is the person of ordinary skill here? So both parties have agreed. I think it's my 10-year-old son. Well, I think that's about what I told my clerks yesterday when I was talking about this. I mean, whether a water balloon is substantially filled doesn't seem to require a whole lot of expertise. But the parties agreed on a much higher... Wait, the parties agreed that it was an associate's degree in the... The examiner said sufficiently filled instead of substantially filled. We wouldn't be here because... Perhaps. When it falls off. But at the same time, we do have shaken to detach limitation, which is the other bound of the claim. I mean, it does it. But yeah, if you said sufficiently filled at the time... In our original case, we talked about what the level of skill in the art was. We did. We laid it out and we said, this is what it is. We did. And I think I said the same thing about my... I think I said the same thing the time my nine-year-old son. But we agreed that between the parties that it was a person with an associate's degree in engineering with some experience in expandable containers. But at the end of the day... This is an incredibly successful product. It is. I mean, I actually think it's a little more sophisticated than you're making it out to be. So, I mean, but it's your client, so it's up to you. It's incredible. I'll say this for my client. I don't even know if he's here, but it's incredibly ingenious. I mean, there's no question that... And this goes to something that's not before this court obviousness, but for 200 years or 150 years, however long we've had latex and water, people have been filling these things up and tying them. And in one day, he's now filling 30 balloons painlessly. So it is incredibly ingenious. And I think I've swerved off point from substantially filled, but I feel like I've beaten that horse to death. You're into your rebuttal. Do you really want to talk about the institution issue? I'll save my time on rebuttal and see where Mr. Chu goes, Your Honor. Okay. Thank you. May it please the court, on behalf of Telegram's Morgan Chu, the tennis position is that a person of skill would know that a balloon is substantially filled with water because if shaken, it would be detaching. And if shaken, it doesn't detach. It would not be substantially filled. There are several problems with that. First, it completely reads out- Can I ask you the preliminary question? Do you have any views about if, and I know you don't want us to agree that it's definite on substantially filled, but if we do under the Packard standard, would there be any reason for us in this case to resolve the Nautilus Packard dispute? I missed part of what you were asking. Are you saying that the court- If you lose under Packard, why would we reach the Nautilus Packard dispute? Isn't Packard a tougher standard, at least ostensibly? Well, let me first discuss very briefly the two different standards and then get to your question, Your Honor. I've thought long and hard about whether these standards are different. Packard says it's going to be indefinite if it's unclear, so it would be definite if it's clear. And I ask myself, what's the difference between clear and where a person of ordinary skill in the yard can determine the scope of the claim with reasonable certainty? So, clear versus reasonable certainty. I killed a lot of brain cells trying to figure out if there's a difference. I do think that this court could resolve the case in favor of telegrams under either standard, and I'll explain that in greater detail. But if we resolve the case under either standard in favor of tennis, it's the same thing. Why would we resolve a dispute that's not before necessarily integral to a decision in this case, particularly when the director has said he wants to re-examine it? You're assuming that clear and unclear are opposites, okay? But isn't there something in between that still isn't unclear, like reasonably clear? Well, I don't know. I can't answer that. I really see the standards as being fairly close, but of course there has been commentary by various people writing review articles and the like saying that there's a difference. But I agree, Your Honor, if this court were to resolve this case for tennis or telegrams under either standard, then it could be resolved for all times. Isn't it meaningful that when Packard was decided that we were looking at a distinction between insolubly ambiguous and what the examiner could possibly have the ability to analyze given the limited record that the examiner can create? And now we have Nautilus. We didn't have Nautilus then. We had polar extremes where the patentee didn't want to have to provide more information to help convince the examiner, and yet the patentee just wanted to say the examiner had to apply the insolubly ambiguous language. So I agree with the historical description that it was a very different world pre-Nautilus. Nautilus, of course, applies to district court proceedings without question. It does not apply under the existing world with respect to examination proceedings, and we also think with respect to PGRs. Let me go back to the merits of... But Packard, we were very careful to talk about pre-issuance analysis. We said it over and over and over. Pre-issuance. And in those circumstances, we were saying that there is an extensive back and forth with the examiner, and if the examiner asks for information to help make them feel more comfortable about whether it's definite, you have an obligation to respond to that. And we just said in the context of that case, there wasn't an adequate response. Isn't that what we said in Packard? Basically, yes. And of course, the PGRs are... Well, the PTO said it was in between. I wouldn't answer to an examination than it is to a district court proceeding, and of all of the different AIA review-type procedures, it is closest for a variety of reasons. On the merits of what substantially filled is, let me give you an example. Because what the tennis position is to equate the balloon detaching as showing that the balloon was substantially filled. So let's suppose we have a person of skill who's watching the game. It's one-third filled with water, two-thirds air. He decides he's going to shake it. He shakes it, it detaches. Then by the tennis position, that is substantially filled. A person of skill and a person of no skill would say, that balloon is not substantially filled. By equating the two, the substantially filled is being read out. There's another problem. It's a legal problem. And it stems from this court's decision in the Halliburton case. There, the court, from a district court decision, found fragile gel to be indefinite for a claim for drilling for oil. And there was a... It very often found claims using the word substantially to be definite, right? In many... In a sense, not less. In many circumstances, the word substantially or something equivalent is found not to be per se indefinite. So I agree with that. One needs to look at the overall context here. You need to know what filled is to begin with, and then add to that the word substantially. Right. And in our last case, admittedly we were applying a nautilus, but the court went through and considered that very question. Does this use of this term of degree render it indefinite? And we said, not in the context of these claims and this specification. I'm not arguing today that the word substantially at all takes something that's definite and renders it indefinite. Let me turn to that, because the court was referring to the affirmance of a preliminary injunction by a different panel. There are significant differences. First, the standard of review on the indefiniteness question was plain error, as opposed to the standard of review here, which is substantial evidence for facts and de novo for pure legal questions. Now, why was it plain error on indefiniteness? The preliminary injunction motion went before a magistrate. The magistrate had a bunch of findings, including on indefiniteness. Telegrants then objected and appealed, but did not object and appeal to the district court on indefiniteness. So that issue really wasn't before the district court. District court didn't need to consider it. District court didn't write on it. That's why the standard was so impossibly high. So that's one big difference. Second difference, the burner proof is very different. In district court, it's clear and convincing to invalidate a claim. In the PTAB, it's by a preponderance of evidence, and there are plenty of decisions that come out inconsistently based on the difference in burden of proof. Well, that all may suggest that that's not enough to apply collateral estoppel here, and I certainly wouldn't find it. But it doesn't suggest that the reasoning doesn't apply equally, even under these differing standards. Isn't the point of the statutory standard to let the public know what the invention is? Anybody that you pluck off the street knows what substantially filled means. I mean, unless you want to play games and try to design around and say, we're selling a water balloon that's not substantially filled, but who wants to buy a water balloon that doesn't get substantially filled? So I'm not arguing an estoppel. The record between what was before the Federal Circuit and- I know you're not arguing an estoppel. You would lose if there's estoppel, but I just don't see the point in talking about all these differences in standards and stuff between the two opinions when the reasoning is essentially the same. I agree. I think you said earlier, you don't see a whole lot of difference between Packard and Nautilus. Frankly, neither do I. But even if we assume that Nautilus is a slightly higher standard to me, I don't understand how the term substantially filled water balloon is at all indefinite. Otherwise, if we had the word filled, you would be coming in here and argue, well, what does filled mean? Does it mean 100% filled? Nothing can be completely, absolutely 100% to a perfect degree of actually filled. So that's why you have substantially. Let me go to your Honor's question about the reasoning. The reasoning for the PTAB as well as the prior Federal Circuit panel is based on the record. There were significant differences. Let me name a few of those differences. There were multiple declarations before the PTAB. There was cross-examination with respect to their opinions on indefiniteness. That cross-examination didn't exist. There were findings of fact by the PTAB with respect to the credibility of Dr. Kudlowitz, in particular, who was Tennis's expert. In numerous places, page 22, 23, 27, 33, and elsewhere, the PTAB is making findings of fact on the credibility of a witness, and the PTAB, by other decisions of this Court, is entitled to deference. So the reasoning at a very high level could be the same, but it's got to be based on the record that was before the District Court versus the record here. Let me give you another example. There's a very extensive briefing on the indefiniteness issue before the PTAB. What was before the magistrate judge? Only the original petition. Only the original petition, not the extensive briefing. But there was extensive briefing here on the indefiniteness issue, and certainly there's expertise here with respect to what is indefinite and what's not. Well, there was definitely briefing, but it was based on a much skinnier record, and there wasn't the kinds of finding of fact based on the credibility of the witnesses. So what this Court needs to do in this case, on this appeal, is to ask itself whether the substantial evidence rule should be applied when the PTAB makes credibility. Now there was a cross-examination through depositions, but this Court has also ruled, and I'm going to cite a case in a moment, even if everything were in written declarations, the credibility determinations of the PTAB should be given deference. In a case that's not actually cited in the briefs is Yorkey, Y-O-R-K-E-Y, versus D-I-A-B, and I think it's 601 F 3rd, 1279, and the jump site is going to be 1284. So when it's just written declarations, the PTAB is entitled to make credibility findings. Yeah, but one of its, you cite to the record at page 33, one of the credibility findings is actually a finding about the interpretation of Dr. Kuderitz's testimony as to strength of the rubber band, and frankly I think the Board's logic is at best circular. You can't hide behind the word credibility to try to make it an unreviewable question when really what you're doing is disagreeing with the substance or merits of the testimony. The point I'm actually making, I'm not hiding behind credibility or any other word, is that you have two competing experts, and they are cross-examined, and all of that full record is before the Board. None of that, in terms of the cross-examination, was before this court or the district court or the magistrate judge, and therefore we have to look at the full record in both cases and determine were there credibility determinations, and if so, was it entitled to deference? That's very, very important here. There are other differences as well. For example, that three-balloon demonstrative was brought up in the PTAB proceeding just before the hearing began, and that shows that it's very difficult to tell what is substantially filled or filled, A, B, and C. I believe the intrinsic record is sufficient to resolve this question. We don't even have to look at any of this, right? No, I beg to differ when you are reviewing the PTAB or another agency's decision, and their decision is based on findings of fact. Then the court needs to review those findings of fact, and in this case, it would be under a deferential standard. Yes, but if we can determine as a matter of law, based upon the intrinsic evidence in the patent and the claims and the specification that this is not indefinite, then we don't need to reach these other subsidiary factual findings. We're not bound, are we, to review only the board's reasoning. We can determine that on our own, this patent term is not indefinite as a matter of law. In a hypothetical case, I think that's possible. I don't think it's possible here because you have experts. First of all, the court are not persons of skill in the art. Second, you have experts with different points of view who are under cross-examination, and there were findings of facts that were key to the agency's decision. In this particular case, Your Honor, I would have a different point of view. One needs to review the clash of facts and the credibility of the witnesses. Okay, your time is up. Thank you very much, Your Honors. Your Honors, very briefly. Can you just start there, which is what do we do with all this extrinsic evidence? I will start there, Your Honor. I challenged Mr. Chu to find in the Patent Trial and Appeals Board written decision anywhere where they said, we make a finding of fact. They had a lot of reasoning, and Dr. Kudrowich's testimony, for example, they didn't say- Well, they say words like unpersuasive. They said, we find it unpersuasive, but they didn't say, we're not going to rely on it, or we're going to rely on Dr. Cameron's. What they did is exactly what this court did. They looked at the claims in the context of the specification, but they reached the opposite conclusion. They didn't do anything more or anything less. And I appreciate Mr. Chu is in a tough position, but there was no evidence that the PTAB had used. They never made a finding of fact saying, we think that Dr. Cameron believes that the strength of the rubber band is this, and therefore, it's invalid. No, they said, well, reading this, we think substantially filled means desired state. All of it was about reasoning. It was all intrinsic. There was no intrinsic evidence in either place. So at the end of the day, the issue here is burden agnostic. So that's the other point I wanted to make. It doesn't matter whether it was a plain error standard or de novo or whatever the standard was, both decisions, the decision of this court in the 066 patent and the decision of the Patent Trial and Appeals Board previously, were agnostic of the burden. They were literally just legal reasoning, looking at the patent in the context of the specification, looking at the claims in context of the specification. So that, to me, is kind of, I mean, I'm not saying we've won, but to me, logically, I don't think you can go outside of that. One other thing I wanted to address, because I've got one minute and 30 seconds left, and I wanted to just put it out there. I do think it's important for the Patent Trial and Appeals Board, when they institute, to do it under the right standard. And I don't mean that just because, oh, it's- He didn't get to that, and you got your chance to get to that. Okay. So I don't get to get to it. I understand, Your Honor. And finally, with respect to Packard, I'll say that why is the patent, the PGR process, not like examination? Because in this case, and over and over again, patent owners experience this, after the Patent Trial and Appeals Board issues its written decision, which we don't know what basis they're going to issue it on. It could have been obviousness. It could have been what they decided. Ultimately, we have no chance to amend. So there's no back and forth, which is one of the principal pieces, I think, of Packard, that there's a dialogue between the patent holder and the office, right? That they're going back and forth, and they have a chance to amend, and you add things to the patent, like what the examiner did here, substantially filled. But that's missing in the PGR process. So in our view, that's the reason why, at the end of the day, Nautilus is something that makes sense, because it's much more like a litigation process, like a judicial process. And for those very same reasons, it's much more a function of this panel, of this court, to make a decision about what the law of the land should be. Thank you, Your Honors.